RECORD NO. 15-2

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

---

ERROL DUKE MOSES,

*Petitioner-Appellant,*

v.

CARLTON JOYNER, Warden,
Central Prison, Raleigh, North Carolina,

*Respondent-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA, GREENSBORO
THE HONORABLE THOMAS D. SCHROEDER, PRESIDING

---

**OPENING BRIEF OF PETITIONER-APPELLANT
ERROL DUKE MOSES**

---

Shelagh Rebecca Kenney
Center for Death Penalty Litigation
123 West Main Street, Suite 700
Durham, North Carolina 27701
(919) 956-9545 Tel.
shelagh@cdpl.org

Kenneth J. Rose
Center for Death Penalty Litigation
123 West Main Street, Suite 700
Durham, North Carolina 27701
(919) 956-9545 Tel.
ken@cdpl.org

*Counsel for Petitioner-Appellant*

**LANTAGNE LEGAL PRINTING** 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477
**A Division of Lantagne Duplicating Services**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT ....................................................3

ISSUE PRESENTED FOR REVIEW ..................................................3

STATEMENT OF CASE ....................................................................3

    Procedural History ......................................................................3

    Statement of Relevant Facts ........................................................7

    Failure to Conduct Investigation in State Post-Conviction Proceedings ......12

    Evidence Uncovered After State Post-Conviction Proceedings ..................12

REQUEST FOR CERTIFICATE OF APPEALABILITY .....................16

SUMMARY OF ARGUMENT ..........................................................18

STANDARD OF REVIEW ...............................................................19

ARGUMENT ..................................................................................20

I.    MR. MOSES IS ENTITLED TO RELIEF FROM THE FEDERAL COURT JUDGMENT PRECLUDING MERITS REVIEW OF HIS UNEXHAUSTED, PROCEDURALLY DEFAULTED INEFFECTIVENESS CLAIM IN LIGHT OF THE CHANGE IN HABEAS PROCEDURAL LAW BY THE SUPREME COURT'S DECISIONS IN *MARTINEZ V. RYAN* AND *TREVINO V. THALER* AS MR. MOSES' CLAIM IS MORE THAN SUBSTANTIAL AND THE EQUITIES ARE IN MR. MOSES' FAVOR........................................20

i

Introduction ................................................................................. 20

    A.    Federal Rule of Civil Procedure 60(b) Applies in Extraordinary Circumstances ..................................................................... 21

    B.    M*artinez/Trevino* Announced a Change in Federal Habeas Procedural Law that Provides Ground for Relief for a Significant Procedurally-Barred Trial Counsel Ineffectiveness Claim ...................................................................................... 23

          Mr. Moses' Trial Counsel Ineffectiveness Claim is Substantial ......... 27

    C.    Other Equitable Considerations Favor Mr. Moses ............................ 32

CONCLUSION .............................................................................. 37

REQUEST FOR ORAL ARGUMENT ................................................. 38

CERTIFICATE OF COMPLIANCE .................................................... 39

CERTIFICATE OF SERVICE ........................................................... 40

# TABLE OF AUTHORITIES

## CASES

*Ackermann v. United States*,
340 U.S. 193 (1950) .......................................................................21

*Barefoot v. Estelle*,
463 U.S. 880 (1983) .......................................................................16

*Barnett v. Roper*,
941 F. Supp. 2d 1099 (E.D. Mo. 2013) .........................................20

*Blakeney v. Perry,*
5:07-CT-3153-FL, Docket No. 19 (E.D.N.C. 2014) .................7, 34

*Blakeney v. Perry,*
5:07-CT-3153-FL, Docket No. 21 (E.D.N.C. 2015) .......................34

*Burch v. Corcoran*,
273 F.3d 577 (4th Cir. 2001) .........................................................19

*Coleman v. Thompson*,
501 U.S. 722 (1991) ...............................................25, 26, 27, 33

*Cox v. Horn*,
757 F.3d 113 (3rd Cir. Aug. 7, 2014) .............................................20

*Dickens v. Ryan*,
740 F.3d 1302 (9th Cir. 2014) .......................................................20

*Dowell v. State Farm Fire & Casualty Automobile Insurance Co.*,
993 F.2d 46 (4th Cir. 1993) ...........................................................22

*In re: Errol Duke Moses*,
No. 13.1, Docket No. 13 (4th Cir. Feb. 7, 2013) ..............................6

*Fowler v. Joyner*,
753 F.3d 446 (4th Cir. 2014) ...............................................23, 24, 35

*Fuller v. Johnson*,
    114 F.3d 491 (5th Cir. 1997) ...........................................................................17

*Gonzalez v. Crosby*,
    545 U.S. 524 (2005)...............................................................................21, 22, 34

*Holland v. Florida*,
    560 U.S. 631 (2010).........................................................................................21

*Klapprott v. United States*,
    335 U.S. 601 (1949).........................................................................................21

*Liljeberg v. Health Services Acquisition Corp.*,
    486 U.S. 847 (1988).........................................................................................21

*Longworth v. Ozmint*,
    377 F.3d 437 (4th Cir. 2004) ...........................................................................17

*Lopez v. Ryan*,
    678 F.3d 1131 (9th Cir. 2012) .....................................................33, 34, 35, 36

*Mackall v. Angelone*,
    131 F.3d 442 (4th Cir. 1997) ...........................................................................33

*Martinez v. Ryan*,
    132 S. Ct. 1306 (2012)...........................................................................*Passim*

*Miller-El v. Cockrell*,
    537 U.S. 322 (2003)...................................................................................16, 18

*Morgan v. Lassiter*,
    No. 12-6, Docket No. 19 (4th Cir. June 26, 2014) ..........................................24

*Moses v. Branker*,
    128 S. Ct. 2970 (2008).....................................................................................34

*Moses v. Branker*,
    554 U.S. 924 (2008)...........................................................................................5

*Moses v. Branker*,
  2007 WL 3083548 (4th Cir. Oct. 23, 2007) ...................................5, 25, 32, 34

*Moses v. Lassiter*,
  No. 13-3, Docket No. 16 (4th Cir. Apr. 16, 2013) ............................................6

*Moses v. North Carolina*,
  528 U.S. 1124 (2000)...........................................................................................4

*Phelps v. Alameida*,
  569 F.3d 1120 (9th Cir. 2009) ....................................................................2, 22

*Porter v. Gramley*,
  112 F.3d 1308 (7th Cir. 1997) ........................................................................17

*Rose v. Lee*,
  252 F.3d 676 (4th Cir. 2001) .....................................................................17, 32

*Sanders v. United States*,
  373 U.S. 1 (1963).............................................................................................35

*Slack v. McDaniel*,
  529 U.S. 473 (2000).................................................................................16, 32

*State v. Moses*,
  350 N.C. 741, 517 S.E.2d 853 (1999) ............................................................4, 7

*State v. Moses*,
  356 N.C. 442, 573 S.E.2d 160 (2002) .............................................................4

*State v. Moses*,
  360 N.C. 652, 639 S.E.2d 57 (2006) ...............................................................5

*State v. Moses*,
  365 N.C. 93, 706 S.E.2d 246 (2011) ...............................................................6

*Strickland v. Washington*,
  466 U.S. 668 (1984).........................................................................................27

*Tennard v. Dretke*,
  542 U.S. 274 (2004) ..................................................................................18

*Trevino v. Thaler*,
  133 S. Ct. 1911 (2013) .......................................................................*Passim*

*Wade v. Robinson*,
  327 F.3d 328 (4th Cir. 2003) ...................................................................17

*Wiggins v. Smith*,
  539 U.S. 510 (2003) ................................................................................31

## STATUTES

28 U.S.C. §1291 ............................................................................................3

28 U.S.C. § 2241 ..........................................................................................3

28 U.S.C. §2253 ............................................................................................3

28 U.S.C. §2253(c) ......................................................................................16

28 U.S.C. §2253(c)(2) .............................................................................16, 32

28 U.S.C. §2254 ............................................................................................3

N.C. Gen. Stat. §15A-1420(c) ....................................................................34

N.C. Gen. Stat. §15A-2000(e)(11) ..............................................................11

N.C. Gen. Stat. §15A-2000(f)(2) .................................................................12

N.C. Gen. Stat. §15A-2000(f)(6) .................................................................12

## RULES

Fed. R. App. P. 4(a)(1) ..................................................................................3

Fed. R. Civ. P. 60(b) ...........................................................................*Passim*

Fed. R. Civ. P. 60(b)(6)..................................................................6, 7, 21, 22, 33, 35

## **INTRODUCTION**

In proceedings prior to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), Mr. Moses argued that the ineffectiveness of his state post-conviction counsel was cause for the default of his compelling claim of trial counsel ineffectiveness. The district court adopted the magistrate judge's recommendation that the ineffectiveness claim raised in federal court was barred from review. On appeal, this Court agreed with the district court's finding that Mr. Moses' ineffectiveness claim presented in federal court was defaulted and barred. The Supreme Court denied *certiorari* in Mr. Moses' case on the very question later affirmed in the *Martinez/Trevino* line of cases. Mr. Moses was also unsuccessful in having the state courts address his successor post-conviction pleading.

Following *Martinez* and *Trevino*, Mr. Moses again sought review of his now-vindicated argument to the lower court in a Rule 60(b) motion, highlighting for the court that the change in the law, combined with the equities in this case, warranted relief from judgment. The court below denied review, relying on this Court's per se bar to Rule 60(b) relief and denied Mr. Moses' request for a certificate of appealability.

At every opportunity, Mr. Moses tried but failed to have the federal courts

recognize a claim of ineffective assistance of state post-conviction counsel as cause to excuse a state procedural bar. In similar circumstances, the Ninth Circuit found that that extraordinary circumstances existed to entitle the petitioner to relief on his motion:

> At each stage of Phelps' struggle over the past eleven years to have his federal *habeas* petition evaluated on the merits, he has put forward sound legal arguments…. In fact, his arguments have been much more than sound—they have been *undeniably correct* under *currently* governing law. Phelps' one and only fault throughout this protracted process, if it can be described as a 'fault' at all, is that his arguments have been overly prescient: On multiple occasions, the legal arguments that Phelps put forward for why his petition was properly filed were rejected by the judges before whom he appeared, only to be fully embraced within a matter of months judges authoring a more authoritative, controlling opinion in a different case.

*Phelps*, 569 F.3d at 1123 (emphasis in original). Like the petitioner in *Phelps*, Mr. Moses has been knocking at the courthouse doors in every court, unsuccessfully seeking review on the merits of his compelling ineffective assistance of trial counsel claim.

For these reasons and those set forth below, this Court should grant Mr. Moses a certificate of appealability, reverse the district court's denial of Mr. Moses' Rule 60(b) motion and remand this case for consideration.

## JURISDICTIONAL STATEMENT

This is an appeal by North Carolina death row prisoner, Errol Duke Moses. The district court had jurisdiction over Mr. Moses' Amended Petition for Writ of Habeas Corpus under 28 U.S.C. §§ 2241 and 2254. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§1291 and 2253. The district court entered judgment on May 12, 2015. Moses gave timely notice of appeal under Fed. R. App. P. Rule 4(a)(1) on June 9, 2015.

## ISSUE PRESENTED FOR REVIEW

I.    **DID THE LOWER COURT ERR IN DENYING MR. MOSES' RULE 60(b) MOTION FOLLOWING THIS CIRCUIT'S PER SE BAR TO RELIEF FROM A FEDERAL COURT JUDGMENT DESPITE THE CHANGE IN HABEAS PROCEDURAL LAW BY THE SUPREME COURT'S DECISIONS IN *MARTINEZ V. RYAN* AND *TREVINO V. THALER*?**

## STATEMENT OF THE CASE

### Procedural History

Petitioner was indicted for the first-degree murders of Ricky Nelson Griffin and Jacinto E. Dunkley. At his capital trial, Mr. Moses was represented by J. Clark Fischer and George R. Clary III. Mr. Moses was convicted of two counts of first-degree murder. Following a capital sentencing proceeding, the jury recommended sentences of death for both first-degree murder convictions and the trial court

3

entered judgment accordingly on November 18, 1997.

Mr. Moses was represented by his trial counsel J. Clark Fischer on appeal. The North Carolina Supreme Court affirmed Petitioner's murder convictions and sentences of death. *State v. Moses*, 350 N.C. 741, 517 S.E.2d 853 (1999). The United States Supreme Court denied the petition for writ of *certiorari*. *Moses v. North Carolina*, 528 U.S. 1124 (2000).

While represented by Edmund L. Gaines and Samuel B. Winthrop, Mr. Moses timely filed a motion for appropriate relief in state court. JA 295, 338. The motion was denied without an evidentiary hearing and the North Carolina Supreme Court denied the petition for review. *State v. Moses*, 356 N.C. 442, 573 S.E.2d 160 (2002).

Undersigned counsel were appointed to represent Mr. Moses in his federal habeas proceedings. On November 3, 2003, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Middle District of North Carolina, including the claim of trial counsel ineffectiveness which is the subject of this appeal. JA 370. Without conducting an evidentiary hearing, the magistrate judge recommended the petition be denied on July 27, 2005. JA 565. Contemporaneously with his objections to the magistrate judge's recommendation, Mr. Moses filed a motion requesting that, given the magistrate judge's finding that

4

the trial counsel ineffectiveness claim was unexhausted, the federal habeas proceedings be held in abeyance to allow him to return to state court and exhaust the claim.

The district court then adopted the magistrate judge's recommendation, denying all claims and denying Mr. Moses' motion to hold the proceedings in abeyance, on October 18, 2005. JA 622. This Court granted a certificate of appealability but then affirmed the denial of the petition for writ of habeas corpus, and denied rehearing. *Moses v. Branker*, 2007 WL 3083548 (4th Cir. Oct. 23, 2007) (unpublished). The United States Supreme Court denied the petition. *Moses v. Branker*, 554 U.S. 924 (2008).

On August 11, 2005, the same day he filed his objections to the magistrate judge's recommendation that his habeas petition in its entirety be denied and that his trial counsel ineffectiveness claim filed in federal court was procedurally defaulted, Mr. Moses filed a successor motion for appropriate relief in state court, seeking to exhaust the trial counsel ineffective assistance claim filed in federal court. JA 601. This motion was summarily denied on March 3, 2006 (JA 635), and the state supreme court denied review on November 16, 2006. *State v. Moses*, 360 N.C. 652, 639 S.E.2d 57 (2006).

Petitioner filed a third motion for appropriate relief in state court on October

5

1, 2009, concerning the prosecutor's failure to reveal a deal with the main witness who testified against Mr. Moses at trial. Following an evidentiary hearing, the motion for appropriate relief was denied and the state supreme court denied review. *State v. Moses*, 365 N.C. 93, 706 S.E.2d 246 (2011).

On September 23, 2011, Petitioner filed a motion pursuant to Fed. R. Civ. P. Rule 60(b)(6), or, in the alternative, Rule 60(d)(3), following the state supreme court's denial of review, seeking relief from the district court judgment in light of the state's failure to reveal a deal with the main witness against Mr. Moses at trial and the fraud perpetrated on the court in the original habeas proceedings. The district court judge adopted the magistrate judge's recommendation that the motion be construed as a successive petition for writ of habeas corpus and that the motion be transferred to the circuit court for a determination of the propriety of pre-filing authorization. The matter was transferred to this Court for a determination of pre-filing authorization in the district court. That motion was denied by this Court on February 7, 2013. *In re: Errol Duke Moses*, No. 13.1, Docket No. 13 (4th Cir. Feb. 7, 2013). Then, on April 16, 2013, this Court dismissed his appeal of the denial of his Rule 60(b) motion. *Moses v. Lassiter*, No. 13-3, Docket No. 16 (4th Cir. Apr. 16, 2013).

In state court, Mr. Moses had properly and timely filed a motion for

appropriate relief pursuant to the North Carolina Racial Justice Act on August 10, 2010, and an amendment on August 30, 2012. The motion and the amendment are pending in state superior court.

On August 19, 2014, Mr. Moses filed a motion for relief from judgment pursuant to Rule 60(b)(6) based on extraordinary circumstances and in the interest of justice. JA 624. On February 13, 2015, the magistrate judge recommended that the motion be denied. JA 706. On May 12, 2015, the district court judge denied the motion. JA 722. Mr. Moses timely filed his notice of appeal. JA 726. He sought a short extension of time for the filing of his opening brief, extending the filing of his opening brief to August 19, 2015. Thus, this brief is timely filed.

Executions in North Carolina are on hold, and have been since January 2007. In 2014, Wake County Superior Court Judge Donald Stephens issued an injunction, prohibiting executions while litigation in state court challenging lethal injection was pending in the trial court and on appeal. *See Blakeney v. Perry,* 5:07-CT-3153-FL, Docket No. 19 (E.D.N.C., September 4, 2014)(Joint Status Report).

## **Statement of Relevant Facts**

Mr. Moses was tried and convicted for the first-degree murders of Ricky Griffin and Jacinto Dunkley. *Moses*, 350 N.C. at 749-50. Mr. Griffin, a drug dealer who repeatedly sold fake cocaine to unsuspecting buyers, was shot and killed

during the early morning hours of November 25, 1995. *Id*. at 746. Mr. Dunkley was shot and killed several months later, on January 27, 1996, allegedly after an altercation with Mr. Moses about money owed. *Id*. at 747.

*Sentencing Phase of Mr. Moses' Trial*

After the jury found Mr. Moses guilty, the case proceeded to a capital sentencing hearing and the State offered no additional evidence at sentencing. The defense offered only three witnesses. Only one lay witness, Mr. Moses' mother, Eleanor Washington, testified. Washington stated she was a drug addict for twenty-two years and had spent time in several drug and alcohol rehabilitation centers. JA 23. When Mr. Moses was a child, Washington was using drugs and abusing alcohol. JA 24-26. Due to her drug addiction, persistent arrests and frequent incarceration, Washington lost custody of her son to her mother, Roxie Johnson. JA 26.  After his second birthday, his mother abandoned him. JA 27. Mr. Moses' father likewise had no contact with him. JA 27.

Two expert witnesses testified on Mr. Moses' behalf at the sentencing phase of his trial. Dr. Jerry Noble testified as an expert in clinical psychology. JA 40. In Dr. Noble's opinion, Mr. Moses suffered from a mental or emotional disorder on the dates of the Griffin and Dunkley murders, and his capacity to conform his conduct to the requirements of law on both dates was impaired. JA 72-73.

8

According to Dr. Noble, Mr. Moses could respond appropriately to incarceration. JA 74. Dr. James H. Johnson, Jr., testified as an expert in geography and sociology with a focus on the issues of black America and the African-American experience in urban society. JA 177-178. According to Dr. Johnson, Mr. Moses grew up in an unstable family situation and lived in an extremely dangerous environment over which he had no opportunity and choice to control. JA 179. Dr. Johnson further testified that Mr. Moses' inner-city neighborhood was characterized by poverty, high rates of joblessness, high rates of family dysfunction, and gang activity. JA 200, 202. In response to the gang activity that Mr. Moses was exposed to from an early age, he had to learn the types of behavior that allowed him to survive on the streets. JA 201-202. Due to his background, Mr. Moses lacked the resources that would have assisted him in overcoming the atmosphere of lethal violence in which he was raised and helped him to participate in mainstream society. JA 207-208.

The prosecutors' closing arguments highlight the prejudice to Mr. Moses due to trial counsel's failure to investigate and present mitigating testimony regarding his background and history. The prosecutors distorted Mr. Moses' background by citing an isolated record in Mr. Moses' juvenile file, stating that "client appears to come from a quiet, stable and secure home." JA 233. The prosecutors mocked the two defense experts, contrasting their opinions with the

reports from mental health professionals who treated Mr. Moses when he was a

juvenile but who were never called to testify:

> They want you to believe that the opinions of Dr. Johnson have more weight than the people who wrote all those reports and these people were there. They saw it, they lived there, they saw it. Where are they? Why didn't the defense bring these people down to explain this?

JA 234.

Prosecutors further exploited the limited time all three defense witnesses had

spent with Mr. Moses:

> . . .this man is able to come in here and beg and he's presented evidence from Dr. Noble and Dr. Johnson and his mother, who has probably seen him more during this trial than she maybe did in his whole life.

JA 231.

> Dr. Noble, he's got 40 hours in this case. Forty hours! How many hours do ya'll have in the case? Eighty, ninety? You've seen this man more than Dr. Noble. You've seen him more than Dr. Johnson so why aren't you in a better position to judge. . . .

JA 265.

Over and over again prosecutors sanitized Mr. Moses' childhood, making it

seem unremarkable, with no answer from the trial counsel due to their failure to

investigate and present the readily-available mitigating evidence. In response to the

proposed mitigating circumstance that "no adult ever exercised appropriate

parental supervision of the Defendant on any consistent basis," the prosecutor

10

argued: "We've got evidence in his own records that his own grandmother, 38 years old, the age of most other people's normal mothers, cared for him for nine years." JA 243.

Prosecutors suggested that Mr. Moses suffered no more violence or deprivation than anyone else growing up in his neighborhood. The prosecutor argued that "everybody has a tough life," and that "just because you're poor doesn't mean you have to go around killing people," and "just because you're black doesn't mean you're somehow defective." JA 249. Similarly, prosecutors argued that the defense experts were trying to tell the jury that "every young black male from Dorchester, Massachusetts is going to grow up to shoot people," but obviously that "ain't true." JA 266.

Prosecutors argued that the defense presented no evidence of "any single good thing he has done in his entire life," and nothing about "good character." JA 263.

After hearing the evidence at the penalty phase and the closing arguments, the jury returned two death sentences, finding the existence of one aggravating circumstance, namely that the murders were part of a course of conduct, N.C. Gen. Stat. §15A-2000(e)(11). The jurors did not find, or did not find mitigating, eleven

11

of the fifteen submitted mitigating factors, including the two statutory mental health mitigating factors, N.C. Gen. Stat. §15A-2000(f)(2) and (f)(6).

### *Failure to Conduct Investigation in State Post-Conviction Proceedings*

In state post-conviction proceedings, Mr. Moses' attorneys did next to nothing to uncover the readily-available mitigation evidence that could have been presented at trial. His attorneys conducted practically no mitigation investigation, contacting only two potential lay witnesses, Mr. Moses' maternal grandmother, Roxie Johnson, and Mr. Moses' girlfriend, Anesha Dennis. Both contacts were made by telephone and, following brief conversations, state post-conviction counsel drafted rudimentary statements for these two witnesses and mailed the statements to them for their signatures. JA 336, 369, 435-436 at ¶21. Other than these two limited interviews, no other mitigation investigation was conducted at the state post-conviction stage.

### *Evidence Uncovered After State Post-Conviction Proceedings*

Because Mr. Moses' absentee mother, Eleanor Washington, was the only lay witness to testify at the penalty phase of Mr. Moses' capital trial, the jury never learned the truly horrific nature of the household in which Mr. Moses had been raised. Although both defense experts at trial had noted that supervision was lacking in the crowded home, and Dr. Johnson testified there was "a lot of

12

hollering and screaming all the time," and that Mr. Moses "felt that sometimes he was mistreated" (JA 185), the jury never learned the true scale of the violence in Mr. Moses' childhood home. There is a stark contrast between the superficial testimony provided to jurors and the compelling details that could have been presented by lay witnesses and documentary evidence had trial counsel conducted a thorough investigation.

Police records of calls to Mr. Moses' childhood home -- records readily available to trial counsel, but never obtained -- demonstrate that during an eleven-year period, from 1975 until 1987, when Mr. Moses was between the ages of three and 15, there were 191 calls made to the police concerning activities at Mr. Moses' home. JA 537-542. Of these 191 calls, 12 were for assault and battery, 31 were for "Family Trouble," eight were missing person reports, and others were identified as calls relating to threats to do bodily harm, statutory rape, malicious mischief, gatherings causing annoyance, and guns found and confiscated. JA 537-542.

The extreme violence in the home was witnessed by Mr. Moses' teachers and recounted in detail by his family members. Mr. Moses' second grade teacher, Mary Coombs, repeatedly saw bruises on Mr. Moses' arms in second grade and learned from Mr. Moses' cousin David, who was in the same class and also lived with Mr. Moses, that he had been burned with a cigarette by relatives who wanted

13

to find out what burning flesh smelled like. JA 443 at ¶5. When Mr. Moses was an infant, his step-grandfather Larry Johnson beat one of the other children in the house so brutally that the child had to be taken to the hospital, with whip marks on his body. JA 521 at ¶10; JA 434 at ¶14. Mr. Moses' maternal grandmother Roxie Johnson also beat the children severely, sometimes waking the sleeping children to beat and spank them so that one of the children took to sleeping in three pairs of pants. *See*, *e.g.*, JA 521 at ¶8; JA 518 at ¶8. Roxie and Larry fought violently and often. *See*, *e.g.*, JA 434-35 at ¶14; JA 518 at ¶5; JA 535 at ¶8. In later years, the children would try to beat Larry up to end his abuse of Roxie, once beating him unconscious. JA 518 at ¶5. Another time, Roxie's mother made Larry stop beating Roxie by beating him over the head with a frying pan. JA 521 at ¶11; JA 516 at ¶6.

Among the more dramatic acts of violence that family members recall occurring at Mr. Moses' childhood home include a shooting by gang members who were trying to join a family celebration (JA 531 at ¶9), and a stabbing (JA 518 at ¶7; *see also* JA 531 at ¶10). Mr. Moses' aunt Myra Tulloch -- one year older than Mr. Moses -- was sexually abused by brothers and cousins, starting at age four. JA 531 at ¶11. Later, Tulloch herself spent four years in prison for sexually molesting four nieces and nephews, including Mr. Moses' younger sister, over a period of

14

five years, beginning when Mr. Moses was living in the house. JA 533 at ¶¶11-15; JA 531 at ¶11; JA 519 at ¶10; JA 537-542 at ¶8.

Mr. Moses emerged from his childhood home scarred and damaged. The devastating impact Mr. Moses' home life had on Mr. Moses was not isolated. There was a profound psychological toll on the other family members who grew up with Mr. Moses. JA 522 at ¶17; JA 435 at ¶18; JA 514 at ¶9; JA 434 at ¶12; JA 545 at ¶6 . Other family members, who were also exposed to the repeated violence, had parallel declines into drug addiction and criminal behavior. JA 519 at ¶12; JA 525 at ¶14; JA 527-528 at ¶¶5, 8; JA 522 at ¶14; JA 535-536 at ¶¶4, 5, 9, 11; JA 532-533 at ¶¶9-10.

The failure to properly investigate Mr. Moses' background denied the jury a further important perspective on his culpability; the jury never heard about a human side, about a life worth preserving. His second-grade teacher recalls how Mr. Moses was a sweet, caring boy in second grade, an underdog who worked hard and looked out for his little sister. JA 443 at ¶8. His first-grade teacher remembers Mr. Moses as a good, respectful boy who never got into trouble. JA 441 at ¶3. He was a sweet little boy who would do yard work and chores for his aunt. JA 516 at ¶8. When Mr. Moses' sister was shunned by the family after they learned she had been sexually abused by a family member, Mr. Moses alone came to visit her

15

almost every day. JA 533 at ¶16 . He was a loving, protective father to his son. JA 547 at ¶4. Caseworker Ann Distasio, who oversaw Mr. Moses' juvenile case when Mr. Moses was in his late teens, remembers him as personable and cooperative, and concludes, "Had Errol been raised in a more structured environment with individual attention given by a consistent and available caretaker, I believe that his life would have been very different. I mean healthy and productive." JA 507 at ¶5.

None of the evidence uncovered after state post-conviction proceedings was presented to the jury during the sentencing phase of Mr. Moses' trial or to the court during the first state post-conviction proceeding.

## REQUEST FOR CERTIFICATE OF APPEALABILITY

A certificate of appealability under 28 U.S.C. §2253(c) must issue if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner satisfies the requirement for a certificate of appealability by demonstrating that reasonable jurists could debate whether his constitutional rights were denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000), quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983) ("petitioner need not show that he should prevail on the merits ... [r]ather, he must demonstrate that the issues are debatable among jurists of reason"); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)("We look to the District Court's application of AEDPA to

petitioner's constitutional claims and ask whether that resolution was debatable among jurists of reason.").

When a district court has dismissed a petitioner's claim on procedural grounds – as it did here in denying Mr. Moses' Rule 60(b) motion – the petitioner must demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001)(quoting Slack, 529 U.S. at 484); *see also Wade v. Robinson*, 327 F.3d 328, 333-34 (4th Cir. 2003)(Gregory, J., concurring) (setting forth burden for certificate of appealability where procedural matter at issue).

Doubts about whether to grant a certificate of appealability should be resolved in favor of a petitioner, *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir. 1997), and the Court may consider the fact that the petitioner is under sentence of death in determining whether to grant the certificate. *Porter v. Gramley*, 112 F.3d 1308, 1312 (7th Cir. 1997). The Court reviews these questions of law *de novo*.

The standard for granting a certificate is not high. Indeed, district courts often issue certificates of appealability where they reject the merits of the claims and this Court affirms the rulings. *See Longworth v. Ozmint*, 377 F.3d 437, 441 (4th

17

Cir. 2004) (district court denies relief but grants appealability on four of nineteen claims; ruling ultimately affirmed), *cert. denied*, 125 S. Ct. 101 (2005). *See also Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Cockrell*, 537 U.S. at 336 (Under the controlling standard, a petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'")(Citations omitted). The Court further explained:

> A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part. We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

*Miller-El v. Cockrell*, 537 U.S. at 337 (internal quotations omitted).

The issue presented here could be, and has been, debated by reasonable jurists or is sufficient to justify encouraging Mr. Moses to proceed further.

## **SUMMARY OF ARGUMENT**

At trial, trial counsel failed to investigate and present significant mitigation evidence at the sentencing phase of Mr. Moses' trial. Due to the ineffective of his

state post-conviction counsel, the compelling evidence was not presented in Mr. Moses' initial state post-conviction pleading. Mr. Moses raised his trial counsel ineffectiveness claim in federal court during his federal habeas proceedings but, given the precedent of the United States Supreme Court at the time, this claim was procedurally barred. Mr. Moses nevertheless continued to argue that the ineffectiveness of his state post-conviction counsel was cause for the default of his claim of trial counsel ineffectiveness. In his Rule 60(b) motion, Mr. Moses argued that the change in procedural law announced in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), and the equities in the case warrant relief from the district court judgment. The district court below denied review, relying on this Court's per se bar to Rule 60(b) relief and denied Mr. Moses' request for a certificate of appealability.

This Court should grant Mr. Moses a certificate of appealability, reverse the district court's denial of Mr. Moses' Rule 60(b) motion and remand this case for consideration.

## **STANDARD OF APPELLATE REVIEW**

The district court's legal conclusions are subject to *de novo* review. *Burch v. Corcoran*, 273 F.3d 577, 591 (4th Cir. 2001).

19

**ARGUMENT**

**I.  MR. MOSES IS ENTITLED TO RELIEF FROM THE FEDERAL COURT JUDGMENT PRECLUDING MERITS REVIEW OF HIS UNEXHAUSTED, PROCEDURALLY DEFAULTED INEFFECTIVENESS CLAIM IN LIGHT OF THE CHANGE IN HABEAS PROCEDURAL LAW BY THE SUPREME COURT'S DECISIONS IN *MARTINEZ V. RYAN* AND *TREVINO V. THALER* AS MR. MOSES' CLAIM IS MORE THAN SUBSTANTIAL AND THE EQUITIES ARE IN MR. MOSES' FAVOR.**

Introduction

The matter before this Court is a matter of first impression. This Court has not yet addressed the interaction of Rule 60(b) and the Supreme Court's decisions in *Martinez/Trevino*. Other circuits have held that the "important" or "remarkable" change in procedural law heralded first by the Supreme Court's opinion in *Martinez* constitutes one of the equitable considerations to be considered in deciding whether relief should be granted under Rule 60(b). *See Cox v. Horn*, 757 F.3d 113 (3rd Cir. Aug. 7, 2014) (vacating district court order and remanding to provide lower court with opportunity to consider petitioner's Rule 60(b) motion); *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc) (remanding case for reconsideration in light of *Martinez*); *see also Barnett v. Roper*, 941 F.Supp.2d 1099 (E.D. Mo. 2013) (granting Rule 60(b) motion filed under *Martinez* as to underlying claim of ineffective assistance of trial counsel at penalty phase for

20

failure to investigate and present mitigating evidence and granting evidentiary hearing on same).

A. Federal Rule of Civil Procedure 60(b) Applies in Extraordinary Circumstances.

Federal Rule of Civil Procedure 60(b) identifies grounds upon which a petitioner can be granted relief from judgment. Fed. R. Civ. P. 60(b). Rule 60(b)(6) is a catch-all provision that provides courts with authority "'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988) (quoting *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949)). A proper case for Rule 60(b)(6) relief is one exhibiting "extraordinary circumstances." *Gonzalez v. Crosby,* 545 U.S. 524, 536 (2005); *Ackermann v. United States*, 340 U.S. 193, 199 (1950).

The "exercise of a court's equity powers [under Rule 60(b)]. . . must be made on a case-by-case basis" that requires the balancing of numerous factors. *Holland v. Florida*, 560 U.S. 631, 650 (2010) (citation omitted). Relevant considerations include, among others, an intervening change in the law, the petitioner's exercise of diligence in pursuing relief, whether relief would upset the parties' reliance on finality of the case, the delay between the finality of the judgment and the Rule 60(b) motion, the degree of closeness between the decision resulting in the original judgment and the subsequent decision that represents a change in the law, and

21

comity. *See Gonzalez*, 545 U.S. at 536-37; *Phelps v. Almeida*, 569 F.3d 1120, 1135-1140 (9th Cir. 2009).

The lower court, in rejecting Mr. Moses' Rule 60(b) motion, adopted the magistrate judge's recommendation that this Court's prior precedent required denial. The magistrate judge pointed to this Court's decision in *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46 (4th Cir. 1993), which followed a per se rule that "a change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60(b)(6)." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir 1993). Following *Gonzalez*, *Dowell*'s per se bar to relief is out of step with the *Gonzalez* decision and the majority of other circuits. Thus, while *Dowell* states a per se rule barring relief where a Rule 60(b) motion is based on an intervening change in the law, *Gonzalez* requires a balancing of numerous factors when weighing the equities under Rule 60(b). *See Gonzalez*, 545 U.S. at 536-37; *Phelps*, 569 F.3d at 1134 (in light of *Gonzalez*, rejecting Ninth Circuit's per se approach to Rule 60(b)).

Thus, this Court should grant a certificate of appealability, find that, in light of *Gonzalez*, a per se bar to relief under Rule 60(b) is no longer the law of this Circuit, and remand this case for further proceedings.

B. *Martinez/Trevino* Announced a Change in Federal Habeas Procedural Law that Provides Ground for Relief for a Significant Procedurally-Barred Trial Counsel Ineffectiveness Claim.

The fundamental concern underlying *Martinez/Trevino* was that a significant ineffective assistance of trial counsel claim would never be heard on the merits due to the ineffective assistance of state post-conviction counsel. That is precisely what happened here such that the court below should have granted Mr. Moses' motion for relief from judgment and permitted further proceedings.

In *Martinez v. Ryan,* the Supreme Court announced an exception to long-standing precedent and found that, under certain circumstances, and for purposes of federal habeas review, post-conviction counsel's failure to raise ineffective assistance of trial counsel claims could excuse a procedural default of those claims. Then, in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the Supreme Court clarified that the *Martinez* rule applied not only to states that expressly denied permission to raise ineffective assistance claims on direct appeal, but also to states that "make[] it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise [the] claim on direct appeal." *Trevino*, 133 S. Ct. at 1921.

It is clear, since this Court's decision in *Fowler v. Joyner*, 753 F.3d 446 (4th Cir. 2014), that the *Martinez/Trevino* rule applies to claims such as the one Mr. Moses has sought to have reviewed. In *Fowler*, this Court applied the *Martinez* and

*Trevino* decisions to North Carolina's procedural framework for ineffective assistance of trial counsel claims, holding that while "North Carolina does not fall neatly within *Martinez* or *Trevino*[,]" "[i]neffective-assistance-of-trial-counsel claims that are not so apparent [from the record], however, will fall within the *Martinez* exception." *Fowler v. Joyner*, 753 F.3d 446, 463 (4ᵗʰ Cir. 2014). *See also Morgan v. Lassiter*, No. 12-6, Docket No. 19 (4ᵗʰ Cir. June 26, 2014) (appointing independent, qualified counsel in a North Carolina capital habeas case under *Martinez v. Ryan*, 132 S. Ct. 1306 (2012), and remanding case to the district court to permit newly-appointed counsel to investigate and file any additional claims).

Applying this Court's reasoning, Mr. Moses's allegations regarding trial counsel's failure to adequately investigate and present mitigating evidence were not apparent from the record on direct appeal, and, therefore, fall within the *Martinez/Trevino* exception. The change in federal habeas procedural the law articulated by *Martinez/Trevino* is significant as it provides a ground for relief for previously-procedurally barred claims of trial counsel ineffectiveness. *Martinez* was not new in stating that "[t]he right to counsel is a bedrock principle in our justice system." *Martinez*, 132 S. Ct. at 1317. However, prior to *Martinez* and *Trevino*, the ineffectiveness of state post-conviction counsel was not accepted as cause for the default of an ineffectiveness of trial counsel claim and such a claim

24

was barred from federal review. *See Coleman v. Thompson,* 501 U.S. 722, 755-57 (1991); *Moses v. Branker*, 2007 WL 3083548, *3 (4th Cir. Oct. 23, 2007).

The Supreme Court in *Martinez* noted that it is necessary for a defendant to have an adequate attorney in order to develop an ineffective-assistance-of-counsel claim. *Martinez*, 132 S. Ct. at 1316-18. Without an attorney, a defendant will have difficulties preparing such a claim since ineffective-assistance-of-trial-counsel claims often require research and knowledge of trial preparation that a prisoner does not personally have. *Id*. at 1317. "While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record." *Id*. If no competent counsel is provided for the defendant, it is possible that "no court will review the prisoner's claims." *Id*. at 1316.

The narrow exception to the procedural default doctrine set out in *Martinez* and *Trevino* is based upon equitable principles:

> Allowing a federal habeas court to hear a claim of ineffective assistance at trial when an attorney's errors (or an attorney's absence) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that a collateral proceeding, if undertaken with no counsel or ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim.

*Martinez*, 132 S. Ct. at 1312. Once a defendant is provided with an attorney, it is

25

important that the attorney is competent or else the "attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective," the prisoner is denied even one fair chance at a hearing on his claim of trial error. *Id*. at 1317 (citing *Coleman*, 501 U.S. at 754). However, a defendant is unable to bring certain claims, such as ineffective-assistance-of-trial-counsel claims, during an appeal on direct review. Where state habeas is the first designated proceeding for a prisoner to raise the ineffective-assistance claim, the collateral proceeding is the equivalent of a prisoner's direct appeal because the state habeas court decides the claim's merits, no other court has addressed the claim, and the defendant is generally unable to represent himself due to lack of knowledge concerning the claim preparation. *Id*. As a matter of equity, in the limited circumstance where a trial ineffectiveness claim was never presented in post-conviction proceedings, the petitioner was entitled, as an equitable matter, to be heard in federal habeas proceedings. *Id*. A petitioner should not be faulted for the errors of state post-conviction counsel who was in the "position to develop the evidentiary basis for a claim of ineffective assistance." *Id*.

Based on these considerations, *Martinez* qualified *Coleman v. Thompson*, with a "narrow exception: inadequate assistance of counsel at initial-review

collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. To establish cause, a prisoner must show either that he had no post-conviction counsel, or that "appointed counsel in the initial-opportunity collateral review proceeding . . . was ineffective under the standards of *Strickland v. Washington*." *Id.* at 1318 (citations omitted). The governing standard for ineffective assistance of counsel in *Strickland* is: (1) the defendant must show that counsel's performance was deficient; and (2) the defendant must show that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Furthermore, the petitioner must also show that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one," i.e., "that the claim has some merit." *Martinez*, 132 S. Ct. at 1318.

*Mr. Moses' Trial Counsel Ineffectiveness Claim is Substantial.*

In federal court and in a successor motion for appropriate relief in state court, Mr. Moses presented significant evidence in support of his substantial claim that his trial counsel provided him with constitutionally ineffective assistance in the investigation and presentation of mitigation evidence under *Strickland v. Washington*, 466 U.S. 668 (1984). At his sentencing hearing, trial counsel presented testimony from only a single, unprepared lay witness with limited

27

knowledge of their client's childhood and history; (2) they conducted an inadequate investigation of their client's childhood background and family circumstances; and (3) they consistently ignored important mitigation leads. In federal habeas proceedings, Mr. Moses presented documentary evidence and affidavits from numerous lay witnesses who were available to testify at trial but were, for the most part, never interviewed by trial counsel. JA 370. These witnesses would have testified regarding Mr. Moses' childhood history of physical abuse and emotional neglect, family history of mental illness, as well as evidence that the family members who were to care for and protect Mr. Moses as a child were criminals, drug addicts and dealers; issues that had not been raised before the trial court.

Trial counsel's failure to present effective lay witness testimony was incompetent. Trial counsel George Clary acknowledges counsel were aware of other family members with important mitigation testimony to offer, and that counsel expected these witnesses to be present at trial and available to testify. JA 432 at ¶11. Mr. Clary candidly admits counsel simply failed to subpoena these witnesses or otherwise ensure their attendance -- despite these witnesses' poverty and distance from North Carolina -- yet were taken by surprise when none of these witnesses attended trial. *Id.* As a result, the only unpaid witness offered by the

28

defense at sentencing was Eleanor Washington, Mr. Moses' biological mother. As counsel was aware, Ms. Washington's role in her son's upbringing was sharply limited as a result of her absence in Mr. Moses' life after he was two years old due to her long-term drug dependence. JA 26-27. As a consequence, Ms. Washington's testimony provided no substitute for the important missing perspectives of the many family members, teachers and professionals who knew Moses and the day-to-day circumstances of his childhood and upbringing.

Trial counsel's deficient performance was not limited to their presentation of witnesses during the sentencing hearing itself, but rather had its roots in their inadequate pre-trial mitigation investigation. Trial counsel made no effort to hire a mitigation investigator. They undertook a single weekend trip to Boston, the city where Moses spent nearly all his life, where they met with four members of Mr. Moses' family and obtained a copy of his juvenile file. They retained two experts, a psychologist and a geographer. The psychologist undertook no further mitigation investigation beyond interviewing Mr. Moses and Eleanor Washington, his biological mother who saw Mr. Moses rarely after Mr. Moses turned two years old; and the geographer only interviewed Mr. Moses. Given the wealth of available, powerful mitigation witnesses and documentary evidence unearthed after state

post-conviction proceedings, trial counsel's failure even to look is incomprehensible.

Trial counsel also failed to pursue known leads to readily-available sources of powerful mitigation evidence. Trial counsel had Mr. Moses' juvenile file from Massachusetts, so were aware that Mr. Moses had been seen by a host of psychologists, case workers, special education teachers, and other specialists throughout his life. JA 445. Professionals could have provided the jury with an objective, credible perspective on Mr. Moses as a boy and the circumstances that shaped him as he matured. JA 507, 509, 511. Trial counsel made no effort to interview any of them, let alone secure their testimony at sentencing.

Further, trial counsel had information from their sparse interview with family members about where Mr. Moses attended elementary school in Massachusetts. JA 439. Nevertheless, trial counsel incorrectly informed their expert geographer that no education records beyond those in the juvenile file were available because "no one in his family could actually remember where he went to school." JA 551. Trial counsel made no effort to contact the school to obtain his records or to speak to teachers who knew Mr. Moses as a child and who would have testified movingly about him. Trial counsel knew from the juvenile file and their interview with family members that Mr. Moses' family and immediate

30

neighborhood were overwhelmed by crime and chaos, yet they made no effort to investigate the criminal history of the household, and they made an altogether inadequate effort to go beyond broad generalizations and isolated stories to develop a compelling penalty phase presentation.

In the final analysis, trial counsel did just enough work to unearth the broad outlines of Petitioner's mitigation story and to determine where to gather the information necessary to develop that story, but after that work ceased. Their error was the same as that committed by counsel and found ineffective in *Wiggins v. Smith*, 539 U.S. 510, 532-34 (2003), and the conclusion must be the same here: counsel's penalty-phase investigation and presentation were unreasonable.

The uninvestigated evidence of Mr. Moses' history and background, uncovered after state post-conviction proceedings, is substantial and compelling. As a result of trial counsel's deficient penalty-phase investigation and presentation, the jury learned next to nothing about the perpetual onslaught of violence and crime in the home where Mr. Moses spent his childhood, next to nothing about his family's history of mental illness, and next to nothing about the warmth and love that Petitioner inspired as a child. *See supra*, at pp. 12-16. The prosecutors exploited defense counsel's failure to investigate or present this evidence in their closing arguments. *See supra* at pp. 9-11. "Had the jury been able to place

Petitioner's excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance." *Wiggins*, 539 U.S. at 536 (citation omitted).

This Court previously determined that Mr. Moses' underlying trial ineffectiveness claim is substantial by granting him a certificate of appealability in his first appeal on the issue of his penalty phase ineffective assistance of counsel claim and whether the ineffective assistance of post-conviction counsel constituted cause for his default. *See Moses v. Branker*, 2007 WL 3083548, *1 (4th Cir. Oct. 23, 2007); 28 U.S.C.A. §2253(c)(2) (entitlement to certificate of appealability requires that a petitioner "make a substantial showing of a denial of a constitutional right"); *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000); *Rose v. Lee*, 252 F.3d 676, 684-85 (4th Cir. 2001).

Thus, the change in habeas procedural law favors relief from judgment here given the strength of Mr. Moses' ineffective assistance of trial counsel claim never heard on its merits and the lower court should not have followed this Court's per se bar to relief.

C.  Other Equitable Considerations Favor Mr. Moses

Mr. Moses does not offer the change in decisional law brought on by the Supreme Court's decisions in *Martinez* and *Trevino* alone as a basis for relief

32

pursuant to Rule 60(b). Instead, Mr. Moses has demonstrated other "extraordinary circumstances" and established he would suffer "extreme hardship" if not granted relief from judgment. *See, e.g., Lopez v. Ryan*, 678 F.3d 1131, 1135-37 (9th Cir. 2012) (articulating and applying factors in determining whether a petitioner has met the showing of "extraordinary circumstances" justifying reopening of the petition pursuant to Rule 60(b)(6)).

In weighing the equities, Mr. Moses has shown extraordinary diligence in pursuing the issue of ineffective assistance of trial counsel during the federal habeas proceedings. *Lopez*, 678 F.3d at 1136. At the time Mr. Moses filed and litigated his habeas petition in federal court, it was settled law that state post-conviction counsel's ineffectiveness was not a relevant consideration in establishing cause for procedural default. *Coleman v. Thompson*, 501 U.S. 722 (1991); *Mackall v. Angelone*, 131 F.3d 442 (4th Cir. 1997). Nevertheless, Mr. Moses argued the ineffective assistance of post-conviction counsel as cause for not previously raising the expanded ineffective assistance of trial counsel claim. JA 559. Following the magistrate judge's recommendation, Mr. Moses raised the claim in a successive state motion for appropriate relief. JA 601. This claim was procedurally barred by the state court because under North Carolina law, "a claim of ineffective assistance of prior post-conviction counsel [may not] constitute good

cause." N.C. Gen. Stat. § 15A-1420(c). JA 635. On appeal of the denial of the writ of habeas corpus, Mr. Moses continued to litigate the issue of the ineffectiveness of post-conviction counsel as "cause" to excuse procedural default. *Moses v. Branker*, 2007 WL 3083548, *3 (4th Cir. Oct. 23, 2007). This Court granted a certificate of appealability on the issue, while ultimately denying relief. *Id.* at **1, 4. Finally, Mr. Moses raised the issue in a petition for writ of certiorari in the United States Supreme Court which was denied on June 23, 2008. *Moses v. Branker*, 128 S. Ct. 2970 (2008); JA 653.

Another equitable factor to be considered is the interest in finality. *Lopez*, 678 F.3d at 1136. Mr. Moses is under a sentence of death, but no executions have been set in North Carolina since 2006. All executions in the State of North Carolina are on hold for the foreseeable future in light of litigation in state court regarding state procedures surrounding lethal injections. *See Blakeney v. Perry,* 5:07-CT-3153-FL, Docket No. 21 (E.D.N.C., March 12, 2015)(Joint Status Report), and *Blakeney v. Perry,* 5:07-CT-3153-FL, Docket No. 19 (E.D.N.C., September 4, 2014)(Joint Status Report) . In addition, Mr. Moses has claims pending in state court properly filed pursuant to the N.C. Racial Justice Act. Thus, this proceeding has no effect on the finality of Mr. Moses' death sentence, and therefore there is no true prejudice to the state. *See Gonzalez*, 545 U.S. at 529

34

(noting that, in considering the petitioner's Rule 60(b) motion, it gave "little weight to the respondent's appeal to the virtues of finality" as "[t]hat policy consideration standing alone is unpersuasive in the interpretation of [Rule 60(b)] whose sole purpose is to make an exception to finality"); *see also Sanders v. United States*, 373 U.S. 1, 8 (1963) ("Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged.").

Another factor concerns "delay between the finality of the judgment and the motion for Rule 60(b)(6) relief." *Lopez,* 678 F.3d at 1136. This Court only recently, in June 2014, resolved the applicability of *Martinez* and *Trevino* to the procedural scheme in North Carolina. *See Fowler*, 753 F.3d at 461-63. Mr. Moses promptly filed his Rule 60(b) motion after this Court's decision in *Fowler.* During the time the Supreme Court was deciding *Martinez* and *Trevino*, Mr. Moses was vigorously litigating claims filed in state court under newly-created rights under the N.C. Racial Justice Act.

Also significant is the direct connection between Mr. Moses' case and the *Martinez/Trevino* rule. *See Lopez,* 678 F.3d at 1137. The intervening change in law represented by *Martinez/Trevino*, permitting the federal courts to excuse a petitioner's procedural default based on ineffective assistance of post-conviction

counsel, overruled the decision Mr. Moses now seeks to reopen. As stated by the magistrate judge in his recommendation to find Mr. Moses' trial counsel ineffectiveness claim procedurally defaulted, "It is clearly established that the constitutional right to counsel does not extend to collateral proceedings." JA 597. In the Supreme Court's *Martinez* decision, the very theory that Mr. Moses raised in federal court, argued to this Court and sought review in the Supreme Court was adopted. Mr. Moses had preserved his *Martinez* argument in his initial federal habeas proceedings and, thus, is entitled to have it considered on the merits at this stage.

An additional equitable consideration to be weighed in this analysis concerns comity. *Lopez,* 678 F.3d at 1137. The new *Martinez/Trevino* rule allows the ineffectiveness of post-conviction counsel to constitute "cause" to excuse a procedural bar invoked by the state court. In this limited context, the United States Supreme Court decided that the interest in protecting the federal constitutional right of effective assistance of counsel – a right that only could be raised in post-conviction proceedings - trumped the state's interest in comity and finality. Here, Mr. Moses seeks reconsideration not of a judgment on the merits of his habeas petition but, instead, of a judgment that, now in error in light of *Martinez/Trevino*, prevented the lower court from ever reaching the merits of his trial counsel

ineffective assistance of counsel claim raised in federal court.

## CONCLUSION

For the reasons stated above, Mr. Moses respectfully requests that this Court issue a certificate of appealability, reverse the district court's decision to deny Mr. Moses' Rule 60(b) motion and remand for further consideration. Here, equity serves to advance the goals of Rule 60(b). Given that Mr. Moses is under a sentence of death, the intervening change in law marked by the *Martinez/Trevino* decisions, the strength of both the ineffective assistance of post-conviction counsel and trial counsel claims, and the marked similarity between Petitioner's case and *Martinez*, all, when considered together constitute "extraordinary circumstances" justifying relief. No state or federal court has ruled on the merits of Mr. Moses' underlying trial counsel ineffective assistance of counsel claim. The procedural ruling barring review of his claim should not stand in the way of ensuring the reliability of Mr. Moses' death sentence.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Because of the significant issues presented, Mr. Moses requests he be granted oral argument.

Respectfully submitted, this the 19th day of August, 2015.

/s/ Shelagh R. Kenney _____
Shelagh R. Kenney, Staff Attorney
N.C. Bar #28202


/s/ Kenneth J. Rose _____
Kenneth J. Rose, Staff Attorney
N.C. Bar # 17208


Center for Death Penalty Litigation
123 West Main Street, Suite 700
Durham, North Carolina 27701

38

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief has been prepared using fourteen point, proportionally spaced, Times New Roman typeface. The software version used was Microsoft Word 2007.

Exclusive of the table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules or regulations; and the certificate of service, the brief contains 8,309 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

August 19, 2015                                    /s/Shelagh R. Kenney
                                                   Shelagh R. Kenney

39

**<u>CERTIFICATE OF SERVICE</u>**

In accordance with Rule 25 of the rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this August 19th, 2015, filed the required copies of the foregoing Opening Brief of Appellant in the Office of the Clerk of the Court, via hand delivery, and have electronically filed the Opening Brief of Appellant using the Court's CM/ECF system which will send notification of such filing to Mr. Peter Regulski, Assistant Attorney General, N.C. Department of Justice, at pregulski@ncdoj.gov.


/s/Shelagh Rebecca Kenney
Shelagh Rebecca Kenney

40